## FREDERIC SPEED, ADMR. *v.* WILLIAM KELLY, ADMR.

1. ESTATES OF DECEASED PERSONS. *Situs of debts. Conflict of laws.*
   For administrative distribution under our laws, a statute, like Code 1880, § 1270, may constitutionally fix here the situs of debts due by residents to deceased foreign creditors ; but *quære*, whether in any circumstances the statute would include as " personal property situated in this State " a debt the evidence of which was in possession of the intestate when he died at his domicile in another State.

2. SAME. *Choses in action. Place of distribution. Code* 1880, § 1270.
   Money deposited in our banks, or a note secured on land here, is not within this statute, if the deposit certificates and books, and the mortgage note are found at the foreign domicile of the intestate, who has no creditors, heirs, or property in this State, and, pending a contest between the domiciliary administrator and a stranger as to administering here, the court of the domicile orders distribution.

APPEAL from the Chancery Court of Warren County.

Hon. UPTON M. YOUNG, Chancellor.

John A. Mason died intestate January 17, 1881, in Louisiana, where he owned his residence with other property, and left surviving him two sisters, a half sister and three brothers of the half blood residing in North Carolina. A physician, the appellee, whose charge for attendance during his last illness was the only debt due from the deceased, qualified as ad-

ministrator in Louisiana, and on Feb. 19, 1881, filed in the chancery clerk's office in Warren County, Mississippi, a certified copy of the record of his appointment, with a certificate of the clerk of the court in Louisiana, that he had executed a sufficient bond and was there liable to account for debts due the intestate in Mississippi. These debts consisted of balances in the Vicksburg Bank and the Mississippi Valley Bank, evidenced by a bank book and certificates of deposit from each, and a note secured by mortgage on land in Warren County. The Chancery Court of this county having recognized his authority to collect these debts, the sisters of the full blood petitioned that the appellant be made administrator, which was done on Feb. 28, 1881, without notice to the appellee, and the order of recognition was revoked. The following week the appellee petitioned for a hearing, and was supported by the relations of the half blood. The evidence showed that the bank books, certificates, mortgage, and note, which the appellee found at the intestate's residence, were inventoried in the Louisiana court, where, the distributees all being present, an order was made pending this contest, directing the immediate distribution of the entire estate as inventoried, in the proportion of four twelfths to each sister of the whole blood, and one twelfth to each person of the half blood, and that the appellant, who was merely a law partner of the full sisters' counsel in this cause, never had any funds belonging to the estate in his possession. Thereupon the appointment of the appellant was set aside, and the appellee's authority reinstated.

*G. Gordon Adam*, for the appellant, argued orally and filed a brief.

At common law the court of the debtor's residence has exclusive jurisdiction over the collection and distribution of debts due a deceased person's estate. *Byron* v. *Byron*, 1 Croke, 472; *Adams* v. *Savage*, 1 Salk. 40; *Hilliard* v. *Cox*, 1 Raym. 562; *Vaughn* v. *Northup*, 15 Peters, 1; *Goodwin* v. *Jones*, 3 Mass. 514; *Vaughn* v. *Barret*, 5 Vt. 333; *Bullock* v. *Rogers*, 16 Vt. 294; *Abbott* v. *Coburn*, 28 Vt. 663; *Fletcher* v. *Wier*, 7 Dana, 345, 349; *Riley* v. *Moseley*, 44 Miss. 37; *McIlvoy* v. *Alsop*, 45 Miss. 365; *Carroll* v. *McPike*, 53 Miss. 569; *Partee* v. *Kortrecht*, 54 Miss. 66. The *dictum* to the contrary in

*Klein* v. *French*, 57 Miss. 662, is opposed to the received doctrine of this State. Our statute (Code 1857, p. 452; Code 1871, § 1950; Code 1880, § 1270), which provides that "all personal property situated in this State" shall be distributed according to its laws, includes choses in action. Even chattels real are "personal property." 2 Black. Com. 386; 2 Kent Com. 423; Co. Litt. 46 a, 118 b; Schouler Pers. Prop. c. 1. The *situs* of such a debt is the residence of the debtor. *Slaughter* v. *Garland*, 40 Miss. 172; *McIlvoy* v. *Alsop, ubi supra; Carroll* v. *McPike, ubi supra; Partee* v. *Kortrecht, ubi supra; Attorney General* v. *Bouwens*, 4 M. & W. 171; Story Confl. Laws, §§ 512, 514. As a matter of comity, where there are no creditors or other claimants in the ancillary jurisdiction, assets will sometimes be transmitted to the domiciliary administrator for distribution. But this will not be done in conflict with a law of the *situs*, or so as to deprive the ancillary administrator of his right to collect debts within his jurisdiction. Story Confl. Laws, §§ 524, 525, 529. The statute (Code 1880, § 2091), allowing foreign administrators to sue here, is purely permissive, and designed only to take the place of this comity. Under our laws the sisters take the entire estate, while in Louisiana the relations of the half blood have a portion, and the rights of the former in property situated here should be protected.

*Buck & Clark* and *Pittman, Pittman & Smith*, for the appellee.

Administration of the proceeds of debts is governed by the law of the deceased creditor's domicile. Choses in action, which are not personal property and have no *situs*, are not within the purview of Code 1880, § 1270. Ancillary administration will not be granted in this State if it subserves no legitimate end, and is detrimental to the interests of the estate. *McIntyre* v. *Ingraham*, 35 Miss. 25; *Klein* v. *French*, 57 Miss. 662; *Merrill* v. *New England Ins. Co.*, 103 Mass. 245; *Wilkins* v. *Ellett*, 9 Wall. 740; *Thorne* v. *Watkins*, 2 Ves. Sr. 35. Title to these debts is in the domiciliary administrator, who can receipt for the proceeds, and his assignee can assert title anywhere. *Harper* v. *Butler*, 2 Peters, 239; *Grace* v. *Hannah*, 6 Jones, 94; *Booyer* v. *Hodges*, 45 Miss. 78; *Swatzel* v. *Arnold*, 1 Woolw. C. C. 383. The State may insist that debts shall not be col-

lected from its citizens by foreigners,· who fail to pay their creditors residing here, but foreign heirs should be paid their distributive parts at home rather than be required to come to this State. *Dawes* v. *Head*, 3 Pick. 128. The appellee has by inventory accounted for these debts in Louisiana ; his bond there secures the proceeds ; by compliance with Code 1880, § 2091, he is prepared to collect them here ; and for another person to administer and collect them, merely to transmit to the domicile, will only multiply costs and commissions. The decree of distribution, made in Louisiana, protecting the heirs of the half blood, should not be interfered with in this State, where its own citizens are not interested. A State has no jurisdiction over debts due non-residents, and cannot affect them by its laws, and a construction which would make this statute embrace such debts would render it unconstitutional. *Pennoyer* v. *Neff*, 95 U. S. 714, 722; Cooley Const. Lim. § 127 ; Story Confl. Laws, § 20 ; Wheaton Int. Law, pt. 2, c. 2.

*E. Clark* and *W. B. Pittman*, on the same side, argued the case orally.

COOPER, J., delivered the opinion of the court.

On a former day of this term we reversed the decree of the court below, because the record showed the propriety of the appointment of the appellant as administrator of the estate of Mason, there being property (debts due the intestate) in this State, and declined to pass upon all the questions presented by counsel for the appellee, because we considered them prematurely presented, as they ought to arise on an application for distribution, and not upon a motion to revoke the letters of the administrator appointed by the courts of this State. Upon the request of counsel, both for the appellant and appellee, and understanding that the parties now before the court really represent the two classes of distributees, we have considered the case as if it was on proceedings for distribution. The cause is to be decided upon the construction of § 1270 of the Code of 1880, which is as follows: " All personal property, situated in this State, shall descend and be distributed according to the laws of this State regulating the descent and distri- bution of such property, regardless of all marital rights which

may have accrued in other States, and notwithstanding the domicile of the deceased may have been in another State, and whether the heirs, or persons entitled to distribution, be in this State or not ; and the widow of such deceased person shall take her share in the personal estate according to the laws of this State." On the part of the appellee it is contended : first, that the words "personal property situated in this State" do not include choses in action held by one who dies domiciled in another State ; and secondly, if they do, the statute is unconstitutional, being an attempted distribution of property not within the territorial limits of the State. Careful and extended research has failed to discover in the laws of any other State or country any similar statutory regulation, and we are left to determine from the statute and its subject the fair import of its terms. We begin by saying that we entertain no doubt of the power of the legislature to overturn the fiction of law that personal property has its *situs* at the domicile of the owner, and to make it distributable by the laws of this State ; that the character of the property in no manner impairs the power ; that the locality given to choses in action, by the fiction that it follows the person of the owner, is as susceptible to be changed and fixed at the place of the residence of the debtor for the purposes of distribution, as the fiction that tangible property is governed by the laws of the domicile may be changed and fixed at the place of the actual *situs* of the property. The fiction is not a rule of international law, but a mere principle, which produces uniformity of judicial action, and is applied by the courts through comity, but which no court would enforce against either a positive statute or the public policy of its State. Whether choses in action are included in the words "personal property situated in this State" is a question in the solution of which we have experienced great difficulty, and which we are unable to determine with entire satisfaction to ourselves. Personal property, whether of a tangible or an intangible character, is considered as located, for the purposes of administration, in the territory of that State whose laws must furnish the remedies for its reduction to possession. When the laws of such State are appealed to for authority and aid, the fiction yields to the fact, and the courts for all pur-

poses of administration enforce the laws of the State under whose authority they act. When, however, in the course of administration, that point is reached at which distribution is to be made, the fund is usually remitted to the domiciliary administrator, but is sometimes distributed by the court having charge of the property, in which event distribution is made according to the law of the domicile. For the purposes of administration, therefore, personal property is situated in that State in which it is found, or, in cases of choses in action, in which the debtor resides ; for the purposes of distribution it is situated in the State of the domicile of the intestate or testator.

The appellant contends that by the terms of our statute all personal property which is subject to administration in this State is also to be distributed according to its laws, while the appellee argues that the statute applies only to such tangible property as has an actual situation here. The words " personal property," if not limited in their operation by the words " situated in this State," are certainly broad enough to embrace choses in action, and ordinarily we think would include them. The suggestion made in the case of *McIntyre* v. *Ingraham*, 35 Miss. 25, that the words " personal estate " do not include promissory notes, is not supported by the authorities cited. But the personal property, which the statute declares shall be distributed according to our laws, is personal property *situated in this State*. Without deciding what would be the result if both the evidence of the debt and the debtor were within this State at the death of the intestate, or whether there may not be cases in which, though the evidence of the debt may be in the hands of the intestate at the time of his death at his domicile in another State, the statute might be held to include the debt as situated in this State; we are of the opinion that under the circumstances shown by the record in this cause the choses in action described in the proceedings cannot be considered as personal property situated in this State. A bequest of all one's personal estate, or of all his goods and property, passes his notes and other choses in action. *Anon.*, 1 P. Wms. 267 ; *Crichton* v. *Symes*, 3 Atk. 61 ; *Moore* v. *Moore*, 1 Bro. Ch. 127. But a bequest of all the personal property situated in a particular place

does not pass choses in action, except such perhaps as are usually treated as money.

In *Fleming* v. *Brook*, 1 Sch. & Lefr. 318, the testator bequeathed to Mrs. Fleming " all my property of whatever nature or kind the same may be that may be found in her house in Duke Street, except a bond of F. M., Esq., in my writing-box in the said house contained." Another bond secured by mortgage, and the mortgage and several bankers' receipts, at the death of the testator, were found in the house. It was held that neither the bond nor the bankers' receipts passed, because choses in action have no locality. In *Moore* v. *Moore*, 1 Bro. Ch. 127, a bequest of " all my goods and chattels in Suffolk " was held not to pass a bond found in a drawer in the house in Suffolk, the Chancellor saying, " Choses in action have no locality ; bonds have no more locality than other choses in action, otherwise than by drawing the jurisdiction of the Ecclesiastical Court."

To the same effect are many other cases. *Jones* v. *Sefton*, 4 Ves. 166 ; *Hertford* v. *Lowther*, 7 Beav. 1 ; *Penniman* v. *French*, 17 Pick. 404 ; *Brooke* v. *Turner*, 7 Sim. 671 ; *Green* v. *Symonds*, 1 Bro. Ch. 129, n. ; *Popham* v. *Aylesbury*, Ambl. 68 ; *Arnold* v. *Arnold*, 2 Myl. & K. 365 ; *Kendall* v. *Kendall*, 4 Russ. 360 ; *Rogers* v. *Thomas*, 2 Keen, 8 ; *Jackson* v. *Robinson*, 1 Yeates, 101. · And the rule may be considered as settled that where the words used are broad enough to include choses in action, yet if they fix a locality to the property given they will be considered as excluded, unless there are other words evidencing an intention to include them, because they have no locality. Unless, then, we can construe the statute as fixing the locality in this State of all debts due by persons resident here, the debts due to the intestate are distributable under the laws of the State of Louisiana, in which he was domiciled. Such a construction would greatly simplify the administration of the estates of non-residents, and relieve us from many complications which may and must arise in administrations which are original and independent as to tangible property situated here, and ancillary as to choses in action reduced to possession by the administrator. But the rule is so well established that choses in action have no local-

ity, that we must conclude that the legislature, if intending to abrogate it, would have done so in direct and positive language. It is said that the statutory provision found in our laws had its origin in the desire to protect the institution of slavery, and was adopted to put slave property on the same footing with real estate; whatever may have been the intention of the provision, it is certainly applicable to all personal property of a tangible character situated here, but we are not able to say that it was intended to embrace choses in action owned by a non-resident, which are entirely disconnected with any business conducted in this State. The rule that such property has its *situs* at the domicile of the owner is universally recognized, and may be said to be as well established as if declared by a positive statute, and we are unwilling to hold it to be abrogated by implication. The decree of the Chancellor will be affirmed, but the costs of this proceeding, both in this court and in the court below, will be paid by the appellee out of the funds of the estate.

*Decree accordingly.*