RICHARDSON v. NEBLETT *et al.*

[84 South. 695, In Banc. No. 20935.]

1. EXECUTORS AND ADMINISTRATORS. *Foreign administrator has no interest in personalty situated in Mississippi.*

   A foreign administrator, though appointed at the domicile of the decedent, had no interest in the personal property of the decedent situated in this state.

2. EXECUTORS AND ADMINISTRATORS. *Payment of debt having situs in Mississippi to foreign administrator is no defense against heirs.*

   The payment to a foreign administrator of a debt due a decedent, the *situs* of which is in this state, affords no protection to the debtor when sued therefor by the heirs of the decedent.

3. DESCENT AND DISTRIBUTION. *Rent on land in Mississippi is a debt governed by its laws.*

   A debt due a nonresident for rent on land situated in this state is personal property situated in this state and governed by its laws regulating the descent and distribution of the property of a decedent.

4. EXECUTORS AND ADMINISTRATORS. *Payment of debt to foreign administrator no defense to suit by heirs unless certified copy of appointment filed.*

Although a debt due decedent may not be subject to the statute of descent and distribution of this state, the payment thereof to a foreign administrator affords no protection to the debtor when sued therefor by the heirs of the decedent, unless a certified copy of the appointment and qualification of such administrator has been filed with the clerk of the chancery court designated by section 2099, Code of 1906 (section 1767, Hemingway's Code).

5. DESCENT AND DISTRIBUTION. *Heirs suing for debt to decedent must allege and prove no necessity of local administration.*

In order that the heirs of a decedent may recover in a suit by them against a debtor to the decedent's estate, they must allege, and, if the allegation is denied, prove, that there is no local administrator of the estate, and that there exists no necessity for the appointment of one.

6. LANDLORD AND TENANT. *Tenant occupying after expiration of lease is liable as a tenant from year to year.*

On the death of the landlord his heir becomes the tenant's landlord, and, if the tenant continues to occupy the leased premises for several years after the expiration of his lease without objection by such heir, his interest in the premises and liability to account to the heir for the use thereof is that of a tenant from year to year.

7. DESCENT AND DISTRIBUTION. *Where no administrator is appointed, personalty descends to heir as if realty.*

When no administrator of the estate of the decedent has been appointed, and no necessity therefor exists, the personal property owned by the decedent at the time of his death descends directly to his heir and vests in him to the same extent as if it were real property.

8. LANDLORD AND TENANT. *Creation of tenancy from year to year not negatived by payment of rent to wrong person.*

The payment of rent by a tenant to the administrator of his deceased landlord under the mistaken belief that he was the proper person to receive it does not of itself alone constitute a refusal by the tenant to recognize the title to the land of his deceased landlord's heir, or prevent his continued occupancy of the land from resulting in a tenancy from year to year.

Appeal from chancery court of Bolivar county.

Hon. Joe May, Chancellor.

Attachment suit by S. S. Neblett and others against W. P. Richardson. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

*R. B. Campbell,* for appellant.

To avoid repetition of argument I will brief the first and third assignments of error together, as both involve the same legal question.

The first of these assignments is to the effect, that the court erred in decreeing for the appellees, as to the rent for the year 1912; and the third is to the effect, that the court erred in decreeing for the appellees the value of the use and occupation of so much of the plantation as embraced section 16.

The grounds, upon which those assignments of error are based, are two-fold; first, that the rent for the year 1912, having accrued during the year of decedent's death, was payable to the administrators of her estate, and had been paid to them before appellees brought their suit; and that decedent's title to said section 16, being a leasehold interest, passed to the administrators of her estate, who were entitled to the use and occupation thereof, and the rent therefor, for all the years involved, had been paid to them before suit was brought; and second, that, if payment of said rent to the administrators was unauthorized, inasmuch as they were foreign administrators, having received their appointment from the state of Virginia, appellees failed to show any right in them to maintain their suit as heirs, for the rent of 1912, of the use and occupation of said section 16 for any of the years involved.

Ann S. Neblett having leased the plantation to the appellant for the year 1912, and then having died that year, the rent to accrue, for that year, was payable to

the administrators of her estate.  Code of 1906, sections 2880 and 2056.

That rent was paid by appellant to the administrators of the estate of Ann S. Neblett, deceased, in the state of Virginia, the state of her domicil at the time of her death.

Likewise, upon her death, said section 16 passed to her administrators, inasmuch as her interest therein was merely an unexpired ninety-nine year lease, and, as an incident, said administrators were entitled to the use and occupation thereof, at least until distribution.  *Dillingham* v. *Jenkins,* 7 S. & M. 479;  *Faler* v. *McCae,* 56 Miss. 227;  *Moss Point Lumber Co.* v. *Harrison Co.,* 89 Miss. 448;  *White* v. *Parker,* 42 Miss. 462.

After the expiration of his lease of the plantation for the year 1912, appellant held over and continued to occupy the same, including said section 16 for each of the year 1913, 1914, 1915, 1916 and 1917, and paid rent therefor to said foreign administrators for each of said years, upon the same basis as for the year 1912.

There is no dispute of the fact that said rent was paid to said administrators, which is unmistakably shown by the record; but appellee's contention is that the payment to them as foreign administrators, was unauthorized.

Regardless of the fact that they were foreign administrators, the voluntary payment of the rent to them was authorized by law, and sufficient to discharge appellant from any further payment thereof, or liability thereof.  13 Am. Eng. of Law (Second Edition), 832;  *Klein* v. *French,* 57 Miss. 662;  *Boyle* v. *Griffin,* 84 Miss. 41.

But whether such payment was authorized, under our law, or not, the bill does not allege, and the record nowhere shows such facts as entitled the appellee, as heirs to maintain their suit therefor.

To entitle them to recover, as heirs or distributees of the estate, it was necessary for them to allege and prove as a condition precedent to their right of recovery, that there were no debts of the decedent, in this state, or that no administration upon the estate had been granted in this state.

Merely alleging and proving that appellees were the heirs and distributees of the decedent, was not sufficient to entitle them to recover any part of the estate which under the law vested in the personal representatives of the estate.

Granting that ancillary administration is abolished in this state, the court below had no right to assume, in aid of appellee's right to recover, that there were no debts owing by the decedent in this state or that no adminisration upon the estate had been granted in this state. It was incumbent upon appellees to make out their case, in that regard, which they failed to do.

So, I respectfully submit that the court erred in decreeing for appellees as to the rent for 1912, and as to the value of the use and occupation of said section 16. *Wood* v. *Ford*, 29 Miss. 57; *Watson* v. *Byrd*, 53 Miss. 480, and cases there cited.

(2) Appellant having leased the plantation for the year 1912, for one thousand two hundred and fifty dollars, with an allowance of one thousand five hundred dollars for repairs to be deducted, and having held over and continued to occupy the plantation for the year 1913 and again—for the year 1914 and again for the year 1915, and again for the year 1916, and again for the year 1917, became a tenant from year to year, at the same rent, and upon the same terms, as for the year 1912; and the court erred in decreeing that appellees were entitled to recover the value of the use and occupation of said plantation, for each of said years, and in not limiting their recovery to the amount of rent, less

the deduction for repairs and taxes, as fixed for the year 1912.

The rule in this state, as announced in *Usher* v. *Moss,* 50 Miss. 208, is that: "Where the tenant continues to occupy, and enters upon another year without objection from the landlord, and with his silence, or tacit consent and approval, a tenancy for another year is thus created."

The rule as stated in Taylor's Landlord and Tenant, section 22 (Ninth Edition), is that: "A tenant for years who holds over after the expiration of his term without paying rent, or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord. Very slight acts on the part of the landlord or a short lapse of time, are sufficient to conclude his election, and make the occupant his tenant; and again in section 525 he states that: "Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise, subject to the same rent." To the same effect is the rule announced in *Love* v. *Law,* 57 Miss. 596; 8 Ency. of Evidence, p. 47; *Providence Co. Sav. Bank* v. *Hall,* 13 Atl. 122; *Baltimore & O. R. Co.* v. *West,* 49 N. E. 344; *Classen* v. *Carroll,* 18 La. Ann. 267; 24 Cyc. 1013, and note 25.

others for a partition of said plantation, which was

It may be contended, in behalf of the appellees, that in the suit which some of them brought against the

So, the rule of law is that, while a landlord had the election, and make the occupant his tenant; or as stated in *Usher* v. *Moss, ubi, supra,* his silence or tacit consent, will conclude his election, and make the occupant a tenant.

election to treat a tenant holding over, as a trespasser a short lapse of time, will be sufficient to conclude his or tenant, very slight acts on the part of the landlord, or

pending from February 1, 1913, down to the end of 1917, the title to a part of said plantation was in dispute—complainants therein claiming an interest in all of said plantation, and the defendants therein denying that complainants had any interest in said section 16, but admitting complainant's interest in the balance of the plantation; that such dispute was not settled, until the supreme court decided in favor of the complainants; and that, therefore, appellees in the instant case, although constituting all of the complainants and defendants in the partition suit, did not know really who owned said plantation, and that, consequently, it was not incumbent upon them to elect whether to treat appellant as a trespasser or as a tenant, in holding possession, and continuing to occupy, the plantation, after expiration of his lease for 1912 and that their silence, in that regard, did not make him a tenant from year to year.

But I respectfully submit that the mere fact that the title to a part of said plantation was in dispute, as between the appellees, during appellant's continued occupany of said plantation, did not excuse them from exercising their election to either treat appellant as a trespasser or a tenant; and that by their failure to object, and their silent acquiescence, he became a tenant from year to year. They were bound to know their title and their ignorance of it, or dispute over it, was not sufficient to rebut the presumption of law that, by holding over, appellant became a tenant from year to year.

(3) The court, in its decree, allowed interest on the rent for the year 1912, and on the sum found to be due for each of the years 1913, 1914, 1915, 1916 and 1917 at the rate of six per cent per annum, from November 1st, in each year, instead of from the last day of each year, and that involves the fourth assignment of errors. There is nothing in the record to show when the rent, for 1912 was due and payable; and the rule is that where no time for the payment of the rent is fixed in the lease, it is not

payable until the end of the term, which, in the case of a lease for a year would be the end of the year. 18 Am. and Eng. Ency. of Law (Second Edition), p. 270.

As to the years from 1912 to 1917, inclusive, appellees, by their testimony sought to establish the value of the use and occupation of the plantation for each of said years, and the court, in its decree, allowed appellees to recover the rental value of said plantation for each of said years, less the taxes paid by appellant; and, consequently such value, being the value for a whole year, and not a part of a year, could not lawfully bear interest until the end of the year; and I think that it is clear that the court erred in allowing interest on the various sums from November 1st, instead of from the last day of the year.

Finally, I respectfully submit, that the decree of the court below should be reversed, and remanded with directions to refer the cause to a commissioner to take and state an account, for each of the years 1913 to 1917 inclusive, on the theory that appellant was a tenant from year to year, during each of those years, at the same rent and upon the same terms as fixed in his lease for the year 1912.

*Sillers & Sillers* and *Green & Green,* for appellees.

When Ann S. Neblett died February 5, 1912, during the term, she ceased to be landlord, and the appellees, as her heirs and distributees, became owners, by inheritance, of Green Island Plantation. *Thomas* v. *Thomas,* 69 Miss. 564, holds: "If a tenant from year to year, upon the death of the landlord, asserts title himself, and refuses to surrender at the end of the year, or to longer pay rent the heirs who recover in ejectment are entitled to charge him thereafter with the reasonable rental value regardless of the former contract price."

Says the court (p.. 568) : ''Furthermore, the death of Richard and the refusal of Alexander to pay any rent thereafter terminated his tenancy, and for the year 1891 the plaintiffs were entitled to recover, not the rent due under former contract with the deceased landlord, but what the leased premises were shown to be reasonably worth.''

Richardson, by sending the rent to the Virginia administrators, refused to recognize the title of appellees or that they were his landlords. His assumed landlords were the Virginia administrators, but even they refused to be his landlords and would not make any lease with him. Thus Richardson was holding over without any authority from appellees, as heirs and distributees, or of the Virginia administrators, and, hence, he was liable for use and occupation under section 2374 of Hemingway's Code.

Notwithstanding the answer in this suit sets, up that E. T. Chambers and N. F. Neblett were administrators of the estate in Virginia, and that the payments of the rent were made to them as such administrators, in the brief for appellant, it is sought to contend that the burden of proof was upon appellees to show that there were no debts and that letters of administration had not been granted in Mississippi.

Appellant contends that the rent for 1912, under the lease made by Ann S. Neblett, was payable to the administrators of her estate, and that appellant was a tenant holding over from year to year. and entitled to pay to the Virginia administrators, as he had done, the same amount of rent as was paid for the year 1912, under the lease from Ann S. Neblett.

Counsel contends that under sections 2880 and 2056, Code 1906, the rent to accrue for the year 1912 was payable to the administrator of the estate and that the distributees cannot recover therefor.

Sections 2880 and 2056 deal with "assets" of the estate, and what are assets, and these assets are to be administered by a lawful administrator, duly qualified in the state of Mississippi. Neither of these sections repeals the law of descent and distribution of personal and real property under sections 1648 and 1649, Code 1906.

Real and personal property, namely, the whole of Green Island Plantation, descended to the heirs at law of Miss Neblett, but the rents of the land for the year of the death are declared to be assets for the payment of debts, under sections 2880 and 2056, Code 1906.

It is well settled in this state that where there is no administration in Mississippi, that the heirs and distributees can proceed in chancery to recover the personal property. *Wood* v. *Ford,* 29 Miss. 57, cited by appellant, is contrary to his contention. There it is held: "As a general rule, that distribution of the estate of a deceased person must be made by the probate court, and through the medium of an administrator or executor; yet there are cases in which a court of chancery will exercise jurisdiction, and one of the cases is, where no administration has been granted in this state. Held, that in such a case a court of chancery has jurisdiction to decree a division of the property and an account for hire, and the distributee is not compelled to take out letters of administration." This is conclusive upon this proposition. So, too, *Watson* v. *Byrd,* 53 Miss. 480, cited in appellant's brief, holds directly contrary to their contention namely: "When there is no administration on the estate of the decedent, a court of chancery will entertain a bill seeking a distribution of the estate amongst the heirs, and render a decree therefor."

On page 483, the court said: "It is well settled in this state that in the absence of an administration of the estate of a decedent a court of chancery will decree distribution among the heirs." *Manley* v. *Kidd,* 33

Miss. 141; *Maxwell* v. *Craft*, 32 Miss. 308; holds the same doctrine.

Counsel for appellant, however, contend that having paid the rent to the foreign administrators, that, regardless of the fact that they were foreign administrators, this payment was a valid one, and discharged appellant from any further payment thereof or liability therefor, citing *Klien* v. *French*, 57 Miss. 662; *Boyle* v. *Griffin*, 84 Miss. 41.

Counsel did not pursue the cases in this state sufficiently for *City Savings & Trust Company* v. *Branchieri*, 72 So. (Miss.), 196, holds: ''Where defendant paid the foreign administrator money belonging to decedent, where no certified copy of the record of such administrator's appointment and qualification, (had been filed as required by Code 1906, section 2099, the defendant was liable to the local administrator for the amount notwithstanding that some two years thereafter a proper certificate was filed.''

And the court there reviewing the authorities shows that *Klien* v. *French*, 57 Miss. —, was decided under a former statute, and that the statute was amended by section 2099, Code 1906, and that *Klien* v. *French*, has no application, and saying: ''But regardless of the holding in that case, the statute (sec. 2099), Code of Mississippi, 1906, now before us, must be the guide in this case.''

There is no pretense that there were any letters of the foreign administrators filed in Mississippi under section 2099, Code 1906, and the payment of the assets to them was illegal and void. The decree in *Neblett* v. *Neblett,* settles the proposition that the title to Green Island Plantation, including this sixteenth section, was vested in appellees, and subject to partition, and a decree of sale was made in that case of the whole plantation, including the sixteenth section, as it was incapable of division, as shown by the decree.

Counsel cites *Usher* v. *Moss,* 50 Miss. 208. As authority for the contention that appellant was a tenant from year to year. *Usher* v. *Moss,* has no application. There, the landlord did not die, but continued to be the owner of the property. There was no change of title from the landlord, by descent cast, to the heirs and distributees.

The affidavit in that case, in the opinion of Judge TARBELL, recited that, "Affiant rented to one N. Usher for that year the following described premises, to-wit: . . . That the said N. Usher holds and continues in possession of said house and about one-half of said cleared land after the expiration of his term, without the consent of affiant, who is landlord thereof, and entitled to the immediate possession of the same."

The court, in its opinion, held that: "The tenancy, according to the affidavit of the landlord, was from year to year, and this could be terminated only at the end of the year, unless stipulated otherwise in the contract."

So far from the landlord here, namely, these appellees, consenting to a renewal of the lease by the holding over, Richardson, appellant, repudiated their title entirely, as stated, and was proceeding upon the adverse theory that the sixteenth section was a leasehold interest and passed to the Virginia administrator, and this theory was upheld by the chancery court in Neblett, and only upon appeal was this erroneous theory reversed.

Thus, under the facts, it could not be said that appellees consented or acquiesced in Richardson continuing as tenant, or that Richardson continued in possession under the consent or acquiescence of appellees. On the contrary, he continued in possession in defiance of and adverse to appellees. *Low* v. *Low,* 57 Miss. 597, cited, has no application, for there the landlord was the same and the tenant remained in possession under the same contract that he had the previous year; and for

the reasons stated, *supra,* this case has no application to the case at bar.

Liability for a reasonable rental value for use and occupation is thus stated in *Sutton* v. *Graham,* 80 Miss. 636: "Where a party, pending negotiations looking to an entire contract with the owner for the yearly lease of lands for several years, and a subsequent purchase enters into possession and the negotiations failed to result in a contract, he is not liable for the rent stipulated for in the negotiations, but is liable for the reasonable rental value of the premises." *Newburg* v. *Cowan,* 62 Miss. 570.

As stated *supra, Thomas* v. *Thomas,* 69 Miss. 564, is directly in point, holding: "If a tenant from year to year, upon the death of the landlord, asserts title himself, and refuses to surrender at the end of the year, or to longer pay rent, the heirs who recover in ejectment are entitled to charge him thereafter with the reasonable rental value, regardless of the former contract price."

It is to be noted that our statutes giving an action for use and occupation, section 2374, Hemingway's Code, section 2876, Code 1906, differ materially from the rule applicable to liability for use and occupation at the common law, and expressly provide: "A landlord, where the agreement is not in writing, or where there is no contract, may recover a reasonable satisfaction for the lands held or occupied by another, in an action for the use and occupation of what was so held or enjoyed."

"And if there appear in evidence, on the trial of such action, any demise or agreement the plaintiff shall not, on that account, be non-suited but may make use thereof as evidence of the amount of damages to be recovered."

The relation of landlord and tenant never existed between appellees and Richardson, and Richardson could

not occupy the position of a tenant holding over from year to year under a contract at the same rental, as no such contract existed.

It is just such a condition that is provided for by section 2374, Hemingway's Code, when it gives the right of recovery for use and occupation of "A reasonable satisfaction," "where there is no contract." This statute imposes liability on a landlord "for lands held or occupied by another," and in the absence of a valid contract, the statute has application. This section 2374, also, applies, "where the agreement is not in writing," and the lands are held or occupied by another.

Under a strict construction of this section where a tenant undertook to hold over, there being no agreement in writing for him so to do, the statute would give the right to the landlord to hold such tenant for reasonable satisfaction for the use and occupation of the lands held or occupied by him.

The express terms of the statute thus negative the proposition that a tenant holding over can claim to hold under the same rental as was applicable to the contract of renting for the preceding year. This statute is so guarded in its provisions that where the suit is for use and occupation under it, and it turns out under the evidence that there was a written contract of lease, the suit is not defeated, but the written contract may be taken as evidence of the reasonable amount of rent.

It thus provides a certain remedy for one whose lands are occupied by another and defeats the subterfuges of tenants under technical defenses. The record shows that the rent for 1912 was to be paid in November, at the time when the same was due, and interest for 1913 was computed from November.

For the other years, 1914 1915, and 1916, the interest was calculated from January 1st, hence the contention that interest should have been charged only from the

· end of the year could have application if at all, only to the first year.

But, as stated, the interest was calculated according to the maturity of the lease of Miss Neblett from November of the first year, and there could not be error in this. If this was an error, the calculation could be corrected here; but we insist that there is no such error committed. The decree should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an attachment suit, brought by the appellees, in the chancery court of Bolivar county, against the appellee, to recover for the use and occupation of Green Island plantation, in that county, for the years 1912, 1913, 1914, 1915, 1916, and 1917.

The plantation consists of section 16, the southeast quarter of section 17, and the northeast quarter of section 21, in township 20, range 8 west, and contains four hundred and ninety acres of open land, which was occupied by the appellant during said years, and of which open land the greater part is in said section 16.

Ann S. Neblett, a resident of the state of Virginia, owned the plantation, and her title to said section 16 was a leasehold interest, being an unexpired ninety-nine-year lease, and her title to the rest of the plantation was a fee-simple title.

For about twenty years prior to her death she had leased the plantation annually to the appellant; and for about twelve years preceding her death she had leased it to him at the annual rent of one thousand two hundred and fifty dollars, allowing him to deduct from the rent annually one hundred and fifty dollars for repairs and improvements and the taxes on the plantation, which he paid annually. She leased the plantation to the appellant for the year 1912 on the same terms, to wit, one thousand two hundred and fifty dollars as rent, and

47—122 Miss.

allowed him one hundred and fifty dollars for repairs and improvements, which, with the amount paid for taxes on the plantation, was to be deducted from the rent. During the year 1912 she died, leaving the appellees as her heirs at law; and T. E. Chambers and N. F. Neblett were appointed in the state of Virginia as administrators of her estate.

In February, 1913, some of the present appellees brought suit against the others for a partition of the plantation as between themselves, which was litigated until the latter part of the year 1917, when the plantation was sold under decree of the court, and a partition of the proceeds was made between the parties. *Neblett* v. *Neblett,* 112 Miss. 550, 73 So. 575.

When the lease of the plantation for the year 1912 made by said Ann S. Neblett to appellant expired, the appellant paid the rent, less the amount allowed for repairs and the amount paid for taxes, to the administrators of the estate, remitting the money to them in the state of Virginia; and he continued to occupy the plantation thereafter consecutively for the years 1913, 1914, 1915, 1916, and 1917, and paid the same rent for each of the years, less deduction for repairs and taxes, as for the year 1912, to said administrators. The administrators advised the appellant that they had nothing to do with Ann S. Neblett's Mississippi property, and declined to rent it to him, but retained the money paid them by him and have it now on deposit in a Virginia bank. All of the parties hereto are nonresidents.

The court below decreed in favor of the appellees for the rent agreed to be paid by the appellant to Ann S. Neblett for the year 1912, and for the value of the use and occupation of the plantation for the years 1913 to 1917, inclusive, having overruled a motion made by the appellant to exclude the evidence of the value of such use and occupation.

The appellant appealed to this court, the grounds of his assignments of error being:

"(1) That, as he had leased said plantation from Ann S. Neblett, the owner, in her lifetime, for the year 1912, and she having died during that year, the rent for that year was payable to the administrators; and consequently appellees have no right to maintain this suit, as to the rent for that year, and especially after appellant had voluntarily paid it to the administrators, notwithstanding the fact that they were foreign administrators;

"(2) That, having leased said plantation for the year 1912 for one thousand two hundred and fifty dollars as rent, with an allowance of one hundred and fifty dollars for repairs, and having continued to occupy the plantation for the year 1913, and again for the year 1914, and again for the year 1915, and again for the year 1916, and again for the year 1917, without objection on the part of the appellees, he became a tenant from year to year, upon the same terms as for the year 1912, and that consequently appellees are not entitled to recover a greater sum for the use and occupation of said land during any of said years; and

"(3) That, inasmuch as the title of Ann S. Neblett to that part of said plantation embracing said section 16 was an unexpired lease for ninety-nine years, that part of said plantation upon her death passed to her administrators, and that consequently appellees are not entitled to recover for the use and occupation of that part."

The first and third assignments of error involve the same questions and will be disposed of together.

Ann S. Neblett's lease of section 16 being a chattel real and under section 2056, Code of 1906 (section 1721, Hemingway's Code), the right to collect the rent due by the appellant for the year of Ann S. Neblett's death would have vested in an administrator of her estate

appointed by the proper court of this state, had such an appointment been made, but the Virginia administrators had no interest whatever therein; for the necessary effect of section 1648, Code of 1906 (section 1380, Hemingway's Code), which provides that "all personal property situated in this state shall descend and be distributed according to the laws of this state," is "to abolish ancillary administrations here altogether, and to make the administration granted of the estate of a nonresident decedent entirely independent of that of the domicile. Whatever surplus remains after creditors have been satisfied must be distributed to the next of kin as prescribed by" the laws of this state. *Partee* v. *Kortrecht,* 54 Miss. 66.; *Carroll* v. *McPike,* 53 Miss. 569.

It is true that the rent for the year 1912 was a chose in action, the owner of which lived in the state of Virginia; nevertheless it is personal property situated in this state within the meaning of our statute of descent and distributions for the reason that it is a debt that arose out of and as an incident to the ownership of property situated in this state. *Jahier* v. *Rascoe,* 62 Miss. 699.

But, even if we should be mistaken as to this, the payment of the rent to the foreign administrators can afford the appellant no protection, for the reason that these administrators failed to file "in the office of the clerk of the chancery court of the county where there may be some person indebted to the decedent or having some of his effects in possession, a certified copy of the record of the appointment and qualification of the executor or administrator according to the law of the state or country where he qualified, and a certificate of the officer before whom he is liable to account as such that he is there liable to account for the thing sued for or received." Section 2099, Code of 1906 (section 1767, Hemingway's Code); *City Savings & Trust Co.* v. *Branchieri.* 111 Miss. 774, 72 So. 196.

In order for the appellees to recover the rent for 1912 and on section 16 for the succeeding years, they should have alleged, and, if the allegation was denied, should have proven, that there is no administrator of this estate appointed in Mississippi, and that there exists no necessity for the appointment of one, and their bill of complaint contains no such allegation.

On the death of Ann S. Neblett the title to the land out of which the rent here in question arose was cast upon the appellees as her heirs at law, and the appellant then became their tenant for the unexpired portion of his lease for the year 1912, and by continuing to occupy the land after the expiration of his lease without objection from the appellees, his landlords, he became their tenant from year to year. *Usher* v. *Moss*, 50 Miss. 208.

It is true that in the eyes of the law Ann S. Neblett's leasehold interest in section 16 was a chattel to be dealt with on her death as personal property; nevertheless, in the absence both of the appointment in this state of an administrator of her estate and of any necessity therefor, it descended directly to her heirs and vested in them to the same extent as did the land owned by her in fee. Section 1653, Code of 1906 (section 1385, Hemingway's Code); *Andrews* v. *Brumfield*, 32 Miss. 107; *Neblett* v. *Neblett*, 112 Miss. 550, 73 So. 575.

That the appellees may have been in doubt as to whether the title to the land was cast by the death of Ann S. Neblett upon all or only a part of them, and that that fact was not determined until the rendition of the decree in the case of *Neblett* v. *Neblett*, *supra*, does not prevent the appellant's continued occupancy of the land from resulting in a tenancy from year to year. When he leased the land for the year 1912, he thereby acquired the right of becoming a tenant thereof from year to year by remaining in possession after the expiration of his lease without objection from his landlord, who then was

Ann S. Neblett, and on her death the land descended to her heirs, burdened with this right of the appellant.

The payment of the rent by the appellant to the Virginia administrators does not indicate, as claimed by the appellees, that he refused to recognize their title to the land, thereby preventing his continued occupancy from resulting in a tenancy from year to year. On the contrary, it indicates that he was trying to pay the rent, but, not knowing to whom it was due, offered it to the wrong person. Had the appellees called on him for the rent and been refused payment, a different question might be presented.

The appellant being a tenant from year to year, the appellee's evidence of the value of the use and occupation of the land should have been excluded.

*Reversed and remanded.*